# CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Petter, Ex'r, et al.

v.

Miguel Acevedo et al.

## Case No. CL920690

BY JUDGE ALFRED D. SWERSKY

### January 6, 1993

This matter is before the Court on the motion of The Virginia Insurance Reciprocal (TVIR) to quash a subpoena *duces tecum* served upon it. The subpoena demands production of "all correspondence, memoranda, or other documentation by Virginia Insurance Reciprocal regarding the claim of David Petter and/or the estate of David Petter v. Miguel Acevedo, M.D."

The subpoena demands documents related to plaintiffs' claim for medical malpractice against defendant, Miguel Acevedo. That claim, filed in this Court, was referred to arbitration and resolved. Plaintiffs have filed this action alleging fraud by defendants, Dr. Acevedo and his wife, in falsifying the medical records of the decedent.

TVIR objects to furnishing certain documents on the grounds of attorney-client privilege and attorney work product.

Plaintiffs claim that the fraud exception bars any claim of privilege and that the documents are necessary to establish whether or not TVIR was a party to the alleged fraud as well as the "depth and breadth of Dr. Acevedo's fraudulent scheme" (Plaintiffs' Memorandum, p. 2). Plaintiffs have assumed that the Court will extend the attorney-client

privilege to the insurance carrier's communication with the insured and insured's counsel.

Plaintiffs are correct. The weight of authority supports such an extension, and the policy reasons for the privilege support its extension to communications made by an insured to his carrier, if the carrier is required by contract to defend him and the information conveyed is intended to assist counsel in defending the insured. *See, State ex rel. Cain v. Barber*, 540 S.W.2d 50 (Missouri, 1976).

TVIR argues that the fraud exception to the privilege does not apply unless the assistance of the attorney has been obtained in furtherance of the fraudulent conduct. Implicit here is the argument that the attorney must be an "active" participant in the fraud to vitiate the privilege. This is simply not the law. See, *Seventh District Committee v. Gunter*, 212 Va. 278 (1971), where the Court stated "If the client does not disclose his fraudulent purpose, there is no confidential relationship established and no attaching privilege." *Gunter, supra*, at p. 287.

The Court finds that plaintiffs have made, for purposes of this motion, a *prima facie* showing of fraud necessary to overcome the privilege. *In re Grand Jury Subpoena*, 884 F.2d 124 (4th Cir. 1989). Thus, communication between the insured, his counsel, and TVIR is not privileged, and the Court will order the production of these documents. The attorney work product privilege is not applicable in this context.

Another situation is created, however, by the demand for the internal memoranda, reports, and notes of the Reciprocal. TVIR is not a party to these proceedings, and no showing has been made that it was a participant in or even aware of the alleged fraud. The Court is reluctant under these circumstances to order the production of the internal documents of TVIR. The Reciprocal must produce all communications between the insured, the insured's counsel, and the Reciprocal but need not yet produce internal documents such as interoffice memos, handwritten notes, confidential reports, claims activity sheets, reserve changes, supervisory reviews, and the like.

The Court will reserve its decision on compelling production of the internal documents of TVIR pending production of the documents ordered by this ruling.

### January 21, 1993

I have reviewed the material sent to me on January 19, 1993. The documents dated April 12, 1991; September 25, 1991; November 8,

1991; March 13, 1992; and May 27, 1992, must be turned over pursuant to my ruling of January 6, 1993.

### February 2, 1993

After an *in camera* review of the documents submitted by counsel for the Virginia Insurance Reciprocal, the Court finds that they contain no relevant evidence nor any information reasonably calculated to lead to the discovery of admissible evidence. Therefore, they will not be turned over to Plaintiff.

If Mr. Miller wishes the documents sealed for appellate purposes, he should so provide in the order he prepares. The documents will remain under seal pending submission of the order.

### February 12, 1993

This matter is before the Court on Defendants' Motions to Reduce *Ad Damnum* based upon their assertion that the torts alleged in the Motion for Judgment are covered by the statutory medical malpractice cap. Section 8.01–581.15, Va. Code Ann. The motions must be denied.

Plaintiff alleges common law fraud, constructive fraud, and conspiracy to commit fraud and obstruct justice against the Defendants, a medical doctor and his wife, an employee. The allegations charge the Defendant with fabricating the medical record of Plaintiff's decedent and then falsely testifying as to the validity of the record in a medical malpractice action initiated by Plaintiffs decided by arbitration by agreement of the parties.

Assuming without deciding that the doctor's wife, acting as his employee in the practice of medicine, is covered by the act as a "health care provider," the Court finds that the torts alleged are not "malpractice" with the meaning of § 8.01–581.1. That section defines "malpractice" as:

> Any tort based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient.

While the maintenance of a patient's record is an important part of a health care provider's role, it is not "health care" within the meaning of the Code nor "professional services" rendered *to* the patient.

Even if, by some stretch of the imagination, the maintenance of the patient's record could be considered health care or professional services rendered to the patient, the legislature could not possibly have

intended to include fraud in altering a patient's record as with the protection of this statute. *See Hagan v. Antonio*, 240 Va. 347 (1990), dissenting opinion; *cf. Pierce v. Caday*, 244 Va. 285 (1992). The special protections afforded by this legislation should not be available under such circumstances as pertain here.

Defendants have further moved to reduce the *ad damnum* as to the punitive damages sought based upon the cap as provided in § 8.01–38.1. These motions must be granted. This Code section prohibits the jury from being advised of the limitation. However, § 8.01–379.1 allows counsel to mention the amount of damages sought. It is patently unfair to allow counsel to comment that $3,000,000 is sought for punitive damages when by law no more than $350,000 can be recovered. Therefore, the punitive damage claim will be reduced to $350,000, but the jury will not be advised that this is the maximum allowed by law.

February 17, 1993

The Defendants' Motions for Summary Judgment will be denied.

Defendants' claim *res judicata* and collateral estoppel arguing that the issues presented by this action were litigated in a previous action which was resolved by arbitration. While some of the same factual matters raised here may have been presented to the arbitrators, it is not sufficiently clear that the issues were determined by the prior proceedings. In spite of Defendants' claims that the subject matter of the arbitration appeared to be open-ended, the issue presented to the arbitrators was the negligence of Dr. Acevedo. The issues raised in the present action involve the alleged fraud of the Defendants in falsifying documents and testifying untruthfully in those arbitration proceedings. Also, Defendant Conception Acevedo was not a party to the prior proceeding but did appear as a witness.

While the fact of the falsification of the documents may have been presented to the arbitration panel as evidence of Dr. Acevedo's negligence and of his lack of credibility, the issues of fraud and the damages arising from it were never presented nor argued to the arbitrators.

Assuming *arguendo* that the doctrines of *res judicata* and collateral estoppel apply to arbitration proceedings, Defendants have not carried the burden on summary judgment to show "with clarity and certainty what was determined by the prior judgment." *Hybert v. Shearson Lehman, et al.*, 688 F. Supp. 320, 326 (E.D. Ill. 1988).

February 26, 1993

This matter is before the Court on Defendants' Motion for leave to depose the arbitrators in the case of *Petter, et al. v. Acevedo* (Alexandria Circuit Court CL910053). The motion is opposed by Plaintiff and arbitrators. The motion will be granted.

Plaintiff and the arbitrators argue that public policy should prevent the taking of these depositions and that arbitrators enjoy the same immunity as judges since they are "quasi-judicial officers."

No statutory immunity exists nor is there case law directly granting such immunity. Under the unique circumstances of this case, the depositions should be permitted.

This cause is independent from the previous action arbitrated by the parties and an issue exists as to the consideration given to certain evidence during the arbitration proceedings. It is relevant on an element of damages claimed by Plaintiff and has direct bearing on Defendants' claims of *res judicata* and collateral estoppel.

While public policy might prevent the inquiry in the usual case of an attempt to upset the arbitration award and reliance must be had solely on the record before the arbitrators, this case is different. This is more than a mere "fishing expedition," and the issues to be covered by the depositions will be strictly limited to the consideration, if any, given by the arbitrators to the medical records in question in this case and any testimony by Defendants about the records. Since the record is clear as to the scope of the matter submitted to arbitration, no inquiry will be permitted along these lines.