**UNITED STATES of America,**

v.

**Dwight Edwin WHORLEY, Defendant.**

**No. CRIM.A. 3:05CR114–HE.**

United States District Court,
E.D. Virginia,
Richmond Division.

Aug. 18, 2005.

Frank W. Dunham, Jr., Robert James Wagner, Office of the Public Defender, Richmond, VA, for Dwight Edwin Whorley.

Sara Elizabeth Flannery, Office of the U.S. Attorney, Richmond, VA, Damon A. King, U.S. Department of Justice, Washington, DC, for United States of America.

## MEMORANDUM OPINION (Defendant's Motions to Dismiss Superceding Indictment)

HUDSON, District Judge.

This matter is before the Court on Defendant Dwight Edwin Whorley's Motion to Dismiss Superceding Indictment and Motion to Dismiss Counts of Superceding Indictment for Failure to Allege an Offense. Both sides have submitted memoranda in support of their respective positions and this Court heard oral argument on August 3, 2005. At the close of oral argument, the Court denied the defendant's Motion to Dismiss on the grounds of multiplicity. The Court also concluded that the defendant's motion to limit units of prosecution involved a mixed question of law and fact and, therefore, its resolution should be deferred until the close of the government's evidence at trial.

The Defendant is charged in a seventy-five (75) count Superceding Indictment ("the Indictment") with a number of offenses arising from the downloading of digital depictions of Japanese anime cartoons of a prepubescent minor, and other child pornography, from the internet onto a computer at the Virginia Employment Commission, a public office, and the receipt of obscene e-mails from an interactive computer service. The defendant challenges the constitutionality of the underlying statutes, both facially and as applied, and moves to dismiss specific counts of the Indictment for failing to allege an offense. The government counters that all statutes are constitutionally sound and that all charges have been appropriately pleaded.

In essence, Counts One (1) through Twenty (20) of the Indictment charge the defendant with knowingly receiving or downloading digital depictions of obscene Japanese anime cartoons from the internet, which had been transported in interstate commerce, in violation of Title 18 of the United States Code § 1462(a) (hereinafter "18 U.S.C."). In Counts Twenty-One (21) through Forty (40), it is alleged that the defendant knowingly received in interstate commerce obscene cartoons that depict a minor engaged in sexually explicit conduct in violation of § 1466(a)(1). Counts Forty–One (41) through Fifty-five (55) contend that the defendant knowingly received or attempted to receive visual depictions that were transported in interstate commerce, the production of which

involved the use of a minor engaged in sexually explicit conduct, in violation of § 2252(a)(2). Finally, Counts Fifty-six (56) through Seventy-five (75) charge the defendant with receiving obscene e-mails in interstate commerce in violation of § 1462.

## I. The Constitutional Challenge

The defendant's constitutional challenge focuses on 18 U.S.C. §§ 1462(a) and 1466A(a)(1). Section 1462(a) generally prohibits the knowing use of any interactive computer service for carriage in interstate commerce of any specified obscene material. Section 1466A proscribes the use of the same media to transfer certain obscene visual representations of the sexual abuse of children. The defendant argues that prohibiting the receipt of obscene materials from the internet for private viewing, violates the defendant's privacy interests protected by the Due Process Clause of the Fifth Amendment to the United States Constitution and his First Amendment protections, as articulated in *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). He also contends that the statutes are unconstitutionally broad by "unfairly expos[ing] unwary internet surfers to criminal sanctions without fair notice" and are impermissibly vague.

■ In *Stanley*, the United States Supreme Court carved out a narrow zone of constitutionally protected privacy which allows for the personal possession and perusal of obscenity in one's home. *Id.* at 565; 394 U.S. 557, 89 S.Ct. 1243, 1248, 22 L.Ed.2d 542 (1969). *Stanley* implicated "the right ... to read or observe what he pleases—the right to satisfy his intellectu-

al and emotional needs in the privacy of his own home." 394 U.S. at 565, 89 S.Ct. 1243. The zone of privacy created in *Stanley*, however, is limited. The Supreme Court has consistently rejected constitutional protection for obscene materials outside the home. *See United States v. 12 200–Ft. Reels of Super 8mm. Film*, 413 U.S. 123, 126–29, 93 S.Ct. 2665, 2668–69, 37 L.Ed.2d 500 (1973). The Court has also declined to extend the privacy rights enunciated in *Stanley* to create a correlative right to receive, transport or distribute obscene materials. *United States v. Orito*, 413 U.S. 139, 141, 93 S.Ct. 2674, 2677, 37 L.Ed.2d 513 (1973). The immediate case involved the alleged receipt of legally offensive materials from the internet. Clearly, under no reasonable construction would the boundaries of *Stanley* extend to the downloading of allegedly obscene materials from a computer in a government office. It is important to keep in mind that the offensive conduct at issue is the use of interstate commerce for an illegal purpose.[1]

The defendant's primary argument with respect to Counts Fifty–Six (56) through Seventy–Five (75), which pertain to obscene e-mails, is equally unpersuasive. Since the communication medium from which the e-mail is transmitted and received constitutes interstate commerce, it is appropriate for governmental regulation. *Orito*, 413 U.S. at 143, 93 S.Ct. at 2677. The linchpin of the prohibited conduct is the use of interstate commerce to access obscene materials. *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971).

---

1. The defendant has cited *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), in support of his argument that transporting and receiving e-mails is a privacy issue. In this Court's view, *Lawrence* is wholly inapplicable to the analysis, because the statute at issue in this case deals with the regulation of unlawful material in interstate commerce.

The defendant's argument, in effect, invites this Court to extend the zone of privacy recognized in *Stanley* to include the contents of e-mails. However, the constitutional inquiry at hand does not turn on an individual right of privacy, but on the government's recognized right to regulate interstate commerce. The United States Code is replete with constitutionally sound statutes that criminalize the use of various mechanisms of interstate commerce to facilitate unlawful activity. For example, Section 1461 of Title 18, making it a crime to transport obscene materials in the United States Mail, has repeatedly survived similar challenges. *See Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1977); *United States v. Reidel,* 402 U.S. 351, 91 S.Ct. 1410, 28 L.Ed.2d 813 (1971). Another example of a constitutionally sound analogous statute is 21 U.S.C. § 843(b), which prohibits any use of a communication facility to further a drug transaction. *See U.S. v. Rodgers,* 755 F.2d 533 (7th Cir.1985), *cert. denied* 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656; *U.S. v. Davis,* 929 F.2d 554 (10th Cir.1991) (upholding a conviction under § 843(b) where defendant did not initiate phone calls, but merely received them, to facilitate illegal activity). For this Court to adopt the defendant's position and expand the contours of the zone of privacy articulated in *Stanley* to include the transportation of material in interstate commerce would be a clear break with long-established precedent. Even in the context of recent technological advances, this Court declines to do so.

■ The next constitutional front on which Defendant assails §§ 1462 and 1466A, is adequacy of notice under the Due Process Clause. This argument is closely allied with Defendant's contention that the statutes are unenforceable and vague. To avoid being unconstitutionally vague, a statute must provide clear and adequate notice of the activity it prohibits.

This, in theory, provides a check against arbitrary enforcement. *Kolender v. Lawson,* 461 U.S. 352, 361, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

■ The defendant's position is best captured by a portion of his Memorandum in Support of the Motion to Dismiss Superceding Indictment. "Notice must be provided in § 1466A(a)(1) of exactly what a person may and may not receive. A person of ordinary intelligence cannot be expected, when surfing the internet, to have an intimate understanding of obscenity law, to the extent that he or she can discern whether one website or one image is constitutionally protected or not." The Supreme Court has never demanded that level of exactitude. *Miller v. California,* 413 U.S. 15, 27–28 n. 10, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).

It appears from the language in the Indictment that Counts One (1) through Forty (40) involve cartoons depicting prepubescent minors engaged in sexually explicit behavior. The universe of child pornography is comprised of materials in two broad categories, those involving depictions of an actual child, and the others portraying simulated representations. The former class of materials need not satisfy the legal definition of obscene to be banned. *See New York v. Ferber,* 458 U.S. 747, 758, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). This category enjoys no First Amendment protection because the underlying production necessary involves the sexual exploitation of children. *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 240, 122 S.Ct. 1389, 1396, 152 L.Ed.2d 403 (2002). The latter class of materials, involving simulated images of children engaged in a sexually explicit conduct, can only be prohibited if they meet the definition of obscenity set forth in *Miller. See also Ashcroft,* 535 U.S. at 240, 122 S.Ct. at 1396 (2002).

Since the materials at issue in Counts One (1) through Forty (40) do not depict actual children, they will be measured by the obscenity standard in *Miller*. Attacks on the *Miller* standard, claiming that it is unconstitutionally vague, have been uniformly rejected by the United States Court of Appeals for the Fourth Circuit. *See Eckstein v. Melson*, 18 F.3d 1181, 1184 (4th Cir.1994). As the Fourth Circuit noted in *Vernon Beigay, Inc. v. Traxler, Inc.*, 790 F.2d 1088, 1093 (1986), with respect to obscenity statutes, "unavoidable imprecision is not fatal and celestial precision is not necessary." In fact, the Fourth Circuit has specifically held the *Miller* standard to be constitutionally sufficient to provide fair notice in the context of 18 U.S.C. § 1460, *et seq*. *Eckstein*, 18 F.3d at 1184–85. This Court believes that the same analysis is applicable here.

■ The final facet of the defendant's constitutionally based contentions is that §§ 1462 and 1466A are impermissibly overbroad. The overbreadth doctrine prohibits the government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process. *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The defendant maintains that these statutory sections are substantially overbroad because they ban materials that are neither obscene nor produced by the exploitation of real children. Depictions which are obscene under the standards announced in *Miller*, or are produced by the exploitation of real children as in *New York v. Ferber*, enjoy no constitutional protections. *Roth*, 354 U.S. at 485, 77 S.Ct. 1304. *See also Ashcroft*, 535 U.S. at 240, 122 S.Ct. 1389.

■ In order for the government to obtain a conviction on any of the counts in the Indictment, which involve visual depictions of minors, the government must either prove that the minors portrayed are actual children, or satisfy the standards of *Miller*. This requisite element of proof is a safeguard against the inclusion of protected speech in the ambit of §§ 1462 and 1466A. The defendant is correct in his argument that sexual expression which is indecent but not obscene, is protected by the First Amendment. The requirements of *Miller* and *Ferber* serve as a firewall to guard against constitutionally protected speech being swept within the ambit of the conduct criminalized by the statutes.

The second component of Defendant's two-tiered constitutional challenge is more narrowly found on its specific application to the facts of this case. Towards that end, the Court has reviewed all the exhibits submitted during oral argument. Even if the outer boundaries of §§ 1462 and 1466A "may be imprecise, any such uncertainty has little relevance here, where (Defendant's) conduct falls squarely within the 'hard core' of the statute's proscription .…" *Broadrick v. Oklahoma*, 413 U.S. at 608, 93 S.Ct. at 2914. Whether measured on its face or as applied to the facts at hand, §§ 1462 and 1466A comport with every time-tested constitutional standard.

## II. Sufficiency of Counts One (1) through Twenty (20) and Forty–One (41) through Fifty–Five (55) of the Indictment to Allege an Offense

■ The defendant contends that Counts One (1) through Twenty (20), alleging a violation of § 1462(a), and Forty–One (41) through Fifty–Five (55), purportedly violating § 2252(a)(2), fail to state a prosecutable offense. In operative part, Counts One (1) through Twenty (20) charge that the defendant, "knowingly used an interactive computer service for carriage in interstate and foreign commerce obscene matters and knowingly received from an interactive computer service obscene matters, to wit: obscene

Japanese anime cartoons, the carriage of which in interstate and foreign commerce is unlawful." With respect to Counts Forty–One (41) through Fifty-five (55), the Indictment reads in pertinent part, that the defendant "knowingly received and attempted to receive one or more visual depictions that had been mailed, shipped and transported in interstate and foreign commerce by any means, including by computer, the production of such visual depictions having involved the use of minors engaged in sexually explicit conduct (as defined in 18 U.S.C. § 2256(2)) . . . ."

The defendant maintains that the charging language in each of these counts is deficient by the omission of critical elements. Consequently, in his view, they fail to state an offense. Focusing first on Counts One (1) through Twenty (20), the defendant asserts that the genre of visual depictions delineated in § 1462(a) does not include cartoons. The defendant points to a companion statute, § 1466A(a), which specifically encompasses cartoons in the universe of materials it proscribes. The defendant argues that Congress's failure to include the word "cartoon" in § 1462(a) is an expression of legislative intent to exclude cartoons from the scope of its coverage. Otherwise, according to defendant's analysis, it would have been specifically included as in § 1466A(a).

The subset of materials at issue are described in § 1462(a), which reads, "any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matter of indecent character." The government counters that the language "other matter of indecent character" is sufficient to encompass obscene cartoons. Unlike other statutes containing more specific prohibitions, § 1462 is a general prohibition on the importation or transportation of obscene matters in interstate or foreign commerce. The government contends that its broad and generic language demonstrates a congressional intent to legislate comprehensively against the distribution of obscene materials. *See United States v. Thomas*, 74 F.3d 701, 708 (6th Cir.1996). This Court agrees.

The construction urged by the defendant is too narrow. As the U.S. Supreme Court has constantly counseled, trial courts should apply a statute consistent with the intent of Congress. The Court has recognized that the obvious purpose of § 1462 was to prevent the channels of interstate commerce from being used to disseminate any obscene matter. *United States v. Alpers*, 338 U.S. 680, 681–83, 70 S.Ct. 352, 354, 94 L.Ed. 457 (1950). In adopting a broad interpretation of the general words, "other matter of indecent character," the Court further observed that § 1462 "is a comprehensive statute, which should not be construed by a mechanical rule of construction." *Id.* at 684, 70 S.Ct. at 354.

The Court is therefore of the opinion that Counts One (1) through Twenty (20) of the Indictment allege a prosecutable offense. The statutory language, "other matter of indecent character," was intended by Congress to include a cartoon which by its nature meets the definition of obscenity articulated in *Miller*. The descriptive phrase must be read in the context of the entire statute.

■ The defendant next challenges Counts Forty–One through Fifty-five (55) on totally different grounds. Unlike Counts One (1) through Twenty (20), which allege that the materials at issue have prohibited content, Counts Forty-one (41) through Fifty–Five (55) allege that the materials, by their very nature, involve the sexual exploitation of minors. A prosecution under this section requires that the depictions be of actual minors, otherwise it lacks the requisite exploitation of a child.

It is the means of production which makes the latter class illegal. *See Ashcroft,* 535 U.S. at 249–50, 122 S.Ct. 1389. The defendant maintains that Counts Forty-one (41) through Fifty-five (55) fail to specifically allege that the defendant knew the persons depicted were actual minors, does not allege that the persons depicted were actual minors, and omits any specificity as to the sexually explicit conduct at issue. The defendant believes that these three elements are critical to a viable charge under § 2252.

In *United States v. X–Citement Video, Inc.,* 513 U.S. 64, 78, 115 S.Ct. 464, 472, 130 L.Ed.2d 372 (1994), the Court concluded that the term "knowingly" in § 2252, extended both to the sexually explicit nature of the material and to the age of the performers. The Court held that in order to get a conviction under the language of the statute, it was necessary to prove those two elements. The same analysis would apply with respect to proof that the minors depicted were actually people as opposed to simulated images. In this Court's view, the allegedly omitted factors may be essential to prove the elements of the offense at trial, but are not critical to a legally sufficient pleading.

In its response, the government emphasizes that the language of Counts Forty-one (41) through Fifty-five (55) of the Indictment tracks this statute, and includes all essential statutory elements. Ordinarily, an indictment that tracks a statutory language is legally sufficient. *United States v. Wicks,* 187 F.3d 426, 427 (4th Cir.1999). In upholding the sufficiency of an indictment for obscenity, the U.S. Supreme Court in *Hamling, et al. v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974), noted that

> [a]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense (internal citations omitted). It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, and without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.

418 U.S. at 117, 94 S.Ct. at 2907–08 (1974).

In the language employed in charging an offense under Counts Forty-one (41) through Fifty-five (55), the government alleges that the visual depictions "involved the use of minors engaging in sexually explicit conduct (as defined in 18 U.S.C. § 2256(2))." A reasonable construction of the plain language used in the Indictment would indicate that actual minors were used in the visual depictions. "It is not necessary, however, for 'a particular word or phrase to appear in the indictment when the element is alleged in a form [that] substantially states the element.'" *United States v. Zangger,* 848 F.2d 923, 925 (8th Cir.1988).

The defendant further contends that Counts Forty-one (41) through Fifty-five (55) fail to describe the sexually explicit conduct allegedly depicted in the visual images. The language in controversy provides the generic description "sexually explicit conduct" (as defined in 18 U.S.C. § 2256(2)). Section 2256(2) defines with particularly the types of conduct which offend the statute. The defendant maintains that a categorical description of the alleged conduct amplified by a code section reference is inadequate to satisfy the notice requirements of the Fifth and Sixth Amendments.

Defendant's argument turns on whether the precise nature rather than a generic

description of the sexually explicit conduct at issue is an essential element of an offense alleged under § 2252. An essential element is one that affects a substantial right, "... whose specification ... is necessary to establish the very illegality of the behavior and thus the court's jurisdiction." *United States v. Hooker*, 841 F.2d 1225, 1231 (4th Cir.1988). Here a recital of the specific conduct underlying the offense is not critical, and therefore, is not an essential element. Proof of any of the types of conduct delineated in § 2256(2) will support a conviction. If the Defendant wishes to ascertain the nature of the government's proof, the appropriate vehicle would be a Request for Bill of Particulars. *United States v. Fletcher*, 74 F.3d 49, 55 (4th Cir.1996).

The Court is therefore of the opinion that Counts Forty-one (41) through Fifty-five (55) are sufficient to allege a violation of § 2252.

In the final analysis, the Court finds that §§ 1462 and 1466A, both facially and as applied, survive constitutional scrutiny. Furthermore, Counts One (1) through Twenty (20) and Counts Forty-one (41) through Fifty-five (55) of the Indictment, properly allege a prosecutable offense. The Defendant's Motion to Dismiss is therefore DENIED.

An appropriate Order will accompany this Memorandum Opinion.

### ORDER

THIS MATTER is before the Court on Defendant Dwight Edwin Whorley's Motion to Dismiss Superceding Indictment and Motion to Dismiss Counts of Superceding Indictment for Failure to Allege an Offense. At the close of oral argument, the Court denied the defendant's Motion to Dismiss on the grounds of multiplicity. The Court also concluded that the defendant's motion to limit units of prosecution involved a mixed question of law and fact and, therefore, its resolution should be deferred until the close of the government's evidence at trial. For the reasons stated in the accompanying Memorandum Opinion, Defendant's remaining motions are HEREBY DENIED.

It is so ORDERED.

The Clerk is directed to send a copy of this Order to all counsel of record.